UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHELLE A. DYER, an individual

    Plaintiff,

v.                                      Case No:   2:11-cv-577-FtM-38DNF

STEWART TITLE GUARANTY COMPANY, GLOBAL COMMUNITY DEVELOPMENT, LLC, THE SQUAD d/b/a THE TITLE CONNECTION, LESLIE YOUNGER CUMMINGS, HARBOR FUNDING GROUP, INC., and MICHAEL D. GARBER, ESQ.,

    Defendants.
_____/

**ORDER**[1]

This matter comes before the Court on Plaintiff Michelle A. Dyer's Amended Motion for Final Default Judgment Against Defendant, Harbor Funding Group, Inc. (Doc. #95) filed on July 10, 2014.  Defendant Harbor Funding Group, Inc. ("Defendant Harbor") has not filed a response, and the time to do so has expired.  The motion is now ripe for review.

**BACKGROUND**

On July 29, 2008, Plaintiff invested in a residential community development project in Hancock County, Mississippi, referred to as Go Zone Duplex Opportunity ("Go Zone").  (Doc. #28 at ¶¶ 16, 27-28, 30).  She entered into a written purchase agreement with Global Community Development, LLC ("GCD"), Go Zone's real estate developer and builder.  (Doc.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

#28 at ¶¶ 16, 30). To facilitate her real estate purchase, Plaintiff deposited $30,725.00 in an escrow account held by The Squad, LLC d/b/a/ The Title Connection ("Title Connection"). (Doc. #28 at ¶¶ 31-32). Plaintiff also executed an escrow agreement with GCD and Title Connection on July 29, 2008. (Doc. #28 at ¶ 34). Under that agreement, she agreed to release $27,200 of the escrow funds to the "Lender Escrow Company," $3,525 to GCD, and $965 to Gulf Coast Rentals. (Doc. #28 at ¶¶ 34; Doc. #28-2 at 2).

Sometime thereafter, Title Connection disbursed $28,200 of Plaintiff's escrow funds to William Lange, agent for Defendant Harbor and Defendant Michael D. Garber, Esq. ("Defendant Garber").[2] (Doc. #28 at ¶¶ 54, 65). It did so, however, "without any firm loan commitment and without having any loan closing scheduled." (Doc. #28 at ¶¶ 54, 64, 68). Title Connection's disbursement to Defendant Harbor became problematic because in June 2009, Defendant Harbor stopped providing mortgages and ceased reasonable communications. (Doc. #28 at ¶ 55).

On October 15, 2009, Plaintiff learned that GCD was filing for bankruptcy and that Stewart Title Guaranty Company ("Stewart") was auditing Title Connection's transactions to determine where Plaintiff's deposits were located. (Doc. #28 at ¶¶ 61-62). It was then discovered that Title Connection wired $27,200.00 to Defendant Garber, $1,000.00 to Defendant Harbor, and $75.00 to Francis Kany. (Doc. #28 at ¶ 65). The remaining balance in the escrow account was $2,450.00, which Stewart refunded to Plaintiff on September 12, 2010. (Doc. #28 at ¶ 66). The remaining unrefunded balance due to Plaintiff is $28,275.00. (Doc. #28 at ¶ 67).

[2] Defendant Garber was Defendant Harbor's attorney.[2] (Doc. #28 at ¶¶ 7, 54).

On October 11, 2011, Plaintiff commenced this action against Defendants Harbor and Garber and others[3] to recover damages caused by the investment deal. (Doc. #1). To date, Defendant Harbor has not answered or otherwise defended against this action. Plaintiff moved for Clerk's Default (Doc. #76) on November 19, 2013, which the Court granted. (Doc. #77, Doc. #78). On May 20, 2014, Plaintiff and Defendant Garber entered a settlement agreement in which all claims against Defendant Garber were resolved and Defendant Garber agreed to pay Plaintiff $5,000. (Doc. #95 at 8). Ten days later, Plaintiff moved for final default judgment against Defendant Harbor. (Doc. #91). The Court denied Plaintiff's motion without prejudice because the record lacked clarity as to whether Plaintiff properly served Defendant Harbor and whether Plaintiff had a remedy against Defendant Harbor because it was an "inactive" and "expired" corporation at the time she initiated this case. (Doc. #93).

Plaintiff has again moved for an entry of final default judgment against Defendant Harbor as to Count III (unjust enrichment) and Count IV (civil theft) of the Second Amended Complaint.[4] (Doc. #95). Plaintiff asserts that Defendant Harbor currently owes her $107,800. (Doc. #95 at 8).

## STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step procedure for obtaining default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of the court must enter a clerk's default against the defendant. See Fed. R.

---

[3] Defendants Stewart Title Guaranty Company, Global Community Development, LLC, The Squad LLC d/b/a The Title Connection, Leslie Younger Cummings, Bryan G. Campo, Donald J. Curran, and RedTec Solutions, LLC have been previously dismissed from this case. (Doc. #26, Doc. #36, Doc. #45, and Doc. #46).

[4] In Count VI of the Second Amended Complaint, Plaintiff alleged that Defendants GCD, Leslie Younger Cummings, Bryan G. Campo, Donald J. Curran, and RedTec Solutions, LLC violated the Securities Exchange Act and SEC Rule 10(b)-5. (Doc. #28 at ¶¶ 108-21). Although Plaintiff did not make any allegations of securities fraud against Defendant Harbor, she named Defendant Harbor in the Wherefore paragraph of Count VI. (Doc. #28 at ¶ 121). This inclusion of Defendant Harbor appears to be a typographical error, as Plaintiff has not moved for default judgment against Defendant Harbor on Count VI. (Doc. #95 at 1, 7).

3

Civ. P. 55(a). Second, after receiving the clerk's default, the court can enter a default judgment against the defendant for not appearing, provided the defendant is not an infant or incompetent person. See Fed. R. Civ. P. 55(b)(2); see also Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc. 803 F.2d 1130, 1134 (11th Cir. 1986) (stating a default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances the case never has been placed at issue").

An entry of a clerk's default, however, does not *per se* warrant an entry of default judgment. Rather, a court may enter a default judgment only if "the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007); Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. . . . A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." (citations omitted)).[5] "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. . . . [A] default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." Nishimatsu, 515 F.2d at 1206. In considering a motion for default judgment, courts must "examine the sufficiency of plaintiff's allegations to determine whether the plaintiff is entitled to" a default judgment. See PNC Bank, N.A. v. Starlight Props.

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1208 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions that the former Fifth Circuit issued before the close of business on September 30, 1981.

4

& Holdings, LLC, No. 6:13-cv-408, 2014 WL 2574040, at *1 (M.D. Fla. June 9, 2014) (citation omitted).

Applying the above principles to the case at bar, the Court finds the allegations in support of Count III and Count IV in the Second Amended Complaint are insufficient to state substantive causes of action for unjust enrichment and civil theft.

## DISCUSSION

### A. Service of process and available remedy

Before the Court examines the sufficiency of Plaintiff's allegations for ruling on the Motion For Final Default Judgment, (Doc. #95), it will address Plaintiff's responses to the service of process and corporate dissolution issues the Court discussed in its Order dated June 17, 2014. (Doc. #93).

Serving process on Defendant Harbor has been anything but straightforward. Plaintiff's difficulty in serving Defendant Harbor has stemmed from the fact that two corporations bear the name "Harbor Funding Group" – one incorporated in Washington and the other incorporated in New York. (Doc. #94 at ¶ 9); see Washington Secretary of State's Corporations Division, http://www.sos.wa.gov/corps/corps_search.aspx (last visited Sept. 25, 2014); New York Department of State, Division of Corporations, State Records & UCC, http://www.dos.ny.gov/corps/bus_entity_search.html (last visited Sept. 25, 2014). In the instant Motion, Plaintiff has clarified that although she named the Washington corporation as a defendant in this action, she first served process on the New York corporation. (Doc. #19; Doc. #28 at ¶ 6; Doc. #94 at ¶¶ 9, 11). Once she learned that William C. Lange of 1414 115th Street Ct. NW, Gig Harbor, Washington, 98332 was Defendant Harbor's registered agent, Plaintiff served process at said address but on the wrong individual. (Doc. #94 at ¶¶ 9, 12). On October 19, 2013, Plaintiff finally served William Lange at the correct address. (Doc. #94

at ¶ 14). Upon this clarification, the Court is satisfied that Plaintiff has served the Second Amended Complaint on Defendant Harbor. (Doc. #75).

Next, when Plaintiff commenced this suit against Defendant Harbor on October 11, 2011, Defendant Harbor had been "inactive" as of June 16, 2010, and "expired" as of July 31, 2010. See Washington Secretary of State's Corporations Division, http://www.sos.wa.gov/corps/corps_search.aspx. Under Washington law, the dissolution of a corporation "by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, officers, or members, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution." Rev. Code Wash. § 23B.14.340 (2013).[6] As an inactive corporation, Defendant Harbor "did not engage in any business activities during the year ending on the expiration date of its corporate license." Rev. Cod. Wash. § 23B.01.530. Also, it appears Defendant Harbor did not file its annual license fee or annual report on or before the expiration of its corporate license, which would render it dissolved. See Rev. Cod. Wash. §23B.01.500 ("[A]ny domestic corporation [that] fails to pays its annual license fee or to file its annual report . . . is dissolved and ceases to exist."); Rev. Cod. Wash. § 23B.14.200 ("The secretary of state may administratively dissolve a corporation under RCW 23B.14.210 if: [t]he corporation does not pay any license fees or penalties . . . "). Since Plaintiff brought this case less than two years after Defendant Harbor became inactive and expired, the Court is satisfied that Plaintiff has a remedy available against Defendant Harbor.

**B.  Amended Motion for Final Default Judgment**

---

[6] In an effort to demonstrate that a remedy is available to her despite Defendant Harbor's "inactive" and "expired" status, Plaintiff cites to Rev. Code of Wash. § 24.03.300. (Doc. #95 at ¶ 15). Section 24.03.300, however, applies to dissolved, non-profit corporations, and Defendant Harbor was a for-profit corporation. See Rev. Code. Wash. § 24.03.300. Through independent research, the Court has identified Rev. Code. Wash. § 23B.14.340 as the applicable section for dissolved, for-profit corporations.

Turning to the Amended Motion for Default Judgment, ([Doc. #95](#)), the Court will now address the sufficiency of Plaintiff's allegations in support of the unjust enrichment (Count III) and civil theft (Count IV) claims.

### *1. Unjust enrichment (Count III)*

Plaintiff's unjust enrichment claim falls short of stating a substantive cause of action. "A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." [Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1337 (11th Cir. 2012)](#); [Fla. Power Corp. v. City of Winter Park, 887 So. 2d. 1237, 1241 n.2 (Fla. 2004)](#). The Second Amended Complaint addresses the first element, but is silent as to the second and third. Title Connection disbursed $1,000 of Plaintiff's escrow funds to Defendant Harbor and $27,200 to Defendant Garber. ([Doc. #28 at ¶ 90](#)). The Second Amended Complaint, however, is devoid of any allegation, let alone a well-pled allegation, that Defendant Harbor accepted and retained the $1,000 and that it would be inequitable for Defendant Harbor to retain the money under the circumstances. Without such central allegations, Plaintiff's unjust enrichment claim is nothing more than a legal conclusion without plausible factual support. See [Nishimatsu, 515 F.2d at 1206](#); [Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)](#). Although the undersigned could assume Defendant Harbor accepted and retained the $1,000 and that it was inequitable for it to do so, a motion for final default judgment cannot rest on such assumptions. See [In re Lee, No. 2:12-CV-10-FTM-29, 2012 WL 4512931, at *8 (M.D. Fla. Sept. 30, 2012)](#) ("[T]he district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought.").

Accordingly, the Court denies Plaintiff's Motion for Default Judgment (Doc. #95) as it applies to Count III of the Second Amended Complaint.

### 2. *Civil theft (Count IV)*

In Count IV of the Second Amended Complaint, Plaintiff alleges that Defendants Harbor and Garber committed civil theft in violation of Florida Statute § 722.11 and requests treble damages for $81,600.00. (Doc. #28 at ¶¶ 93-97). To maintain a cause of action for civil theft, Plaintiff must show by "clear and convincing evidence" an injury caused by Defendant Harbor's violation of one or more of the provisions of the criminal theft laws found in Fla. Stat. §§ 812.012-037. See Fla. Stat. § 772.11; Palmer v. Gotta Have It Golf Collectibles, Inc., 106 F. Supp. 2d 1289, 1303 (S.D. Fla. 2000) (stating "a cause of action for civil theft 'derives from two statutory sources: the criminal section setting forth the elements of theft, and the civil section granting private parties a cause of action for a violation of the criminal section'" (citation omitted)).

As with the unjust enrichment claim, Plaintiff falls short of stating a substantive cause of action for civil theft. Plaintiff offers nothing more than bare-bones factual claims, asserting only that Title Connection wrongfully wired $27,200.00 to Defendant Harbor and that Defendant Garber "and/or" Defendant Harbor improperly converted the $27,200.00 in violation of Florida Statute § 722.11. (Doc. #28 at ¶¶ 94-96). Plaintiff's use of "and/or" is particularly troubling because that phrase implies Defendant Harbor may or may not have had a role in the alleged civil theft. The Court declines to enter a default judgment based on such an ill-plead allegation that, in effect, relies on Defendant Harbor's admission that it or Defendant Garber unlawfully converted her property. See Jenkins v. N. Texas Maint., Inc., No. 2:12-CV-677-FTM-38, 2013 WL 3802527, at *1 (M.D. Fla. July 19, 2013).

Moreover, even if Plaintiff sufficiently pled a civil theft claim, the Second Amended Complaint (Doc. #28) and her Affidavit As To Amounts Due and Owing (Doc. #95) offer

competing narratives as to the amount of damages Defendant Harbor allegedly owes her. In the Second Amended Complaint, Plaintiff maintains that Defendants Harbor and/or Garber owe her $81,600 in treble damages, whereas in her Affidavit, she alleges treble damages totaling $84,600. (Compare Doc. #28 at ¶ 97 with Doc. #95 at 8). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." In re Lee, 2012 WL 4512931, at *9 (citing Fed. R. Civ. P. 54). Plaintiff unequivocally requests, without explanation damages in excess of those alleged in the Second Amended Complaint (Doc. #28). See Guevara v. Shutter-Man Storm & Sec., Inc., No. 206CV511FTM29SPC, 2007 WL 678036, at *2 (M.D. Fla. Mar. 5, 2007) (stating additional facts not alleged in the complaint are "not attributable to defendants in default"). Furthermore, the Second Amended Complaint states Defendant Garber wrongfully received $27,200.00 of Plaintiff's escrow funds and Defendant Harbor only received $1,000.00. (Doc. #28 at ¶ 65). Thus, it is unclear why Defendant Harbor owes Plaintiff for treble damages totaling more than three times the amount it wrongfully received (i.e., $3,000.00). Accordingly, the Court denies Plaintiff's Amended Motion for Final Default Judgment as to Count IV of the Second Amended Complaint.

In conclusion, although detailed factual allegations are neither necessary nor desirable, the Court must have a sufficient basis to conclude that Defendant Harbor is liable for unjust enrichment and civil theft. This is not the case here. The Court, therefore, denies Plaintiff's Amended Motion for Default Judgment Against Defendant Harbor (Doc. #95).

Accordingly, it is now

**ORDERED:**

(1) Plaintiff Michelle A. Dyer's Amended Motion for Default Judgment Against Defendant, Harbor Funding Group, Inc. (Doc. #95) is **DENIED**.

(2) Plaintiff shall advise the Court as to her intentions for prosecuting this matter on or before **October 14, 2014**.

**DONE** and **ORDERED** in Fort Myers, Florida this 30th day of September, 2014.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record